United States District Court
Southern District of Texas
**ENTERED**
January 17, 2024
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| JUSTIN ALBAUGH, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:23-cv-146 |
| | § | |
| | § | |
| WIND ACCESS ENGINEERING INC. | § | |
| AND MAGIC VALLEY ELECTRIC | § | |
| COOPERATIVE, INC., | § | |
| Defendants. | § | |

**MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

Before the Court are Plaintiff Justin Albaugh's "Motion to Remand" and "Motion for Leave to Amend" his Complaint. Dkt. Nos. 4, 6. Defendant Wind Access Engineering, Inc. ("Wind Access") filed responses to both of Albaugh's motions. Dkt. Nos. 5, 7, 9. For the reasons provided below, the Court recommends that Albaugh's motions be **DENIED**, and Defendant Magic Valley Electric Cooperative, Inc. ("Magic Valley Electric") be **DISMISSED** as a party to this action.

## I.   BACKGROUND

On August 18, 2023, Albaugh, an Ohio resident, filed suit in the 197th District Court of Willacy County, Texas against Defendants Wind Access, a Wisconsin corporation, and Magic Valley Electric, a Texas corporation. Dkt. No. 1-3 at 2. The following represents his Complaint's "Facts" section in its entirety:

> This lawsuit is necessary because of an incident that occurred on or about December 07, 2021. On the date in question, Plaintiff was preparing to work on a wind turbine using a wind access 260 BMP platform. Plaintiff was uptower lowering the steel cable that the platform uses, when the spool holder malfunctioned and the cable "rat nested" and caught his hand

causing his hand to become nearly severed. As a result of the incident, Plaintiff has already undergone surgery to repair the serious injuries to his hand and arm. [Image of Plaintiff's injured wrist and hand omitted.] He was also severely traumatized and has already sought extensive medical treatment because of his injuries.

*Id.* at 3. On these facts, Albaugh sued Magic Valley Electric for premises liability, negligence, negligence per se, and gross negligence. *Id.* at 3–4, 7–8. He sued Wind Access for products liability, strict products liability, negligence, negligence per se, and gross negligence. *Id.* at 4–8. Albaugh seeks damages exceeding $1 million. *Id.* at 9–10.

On October 9, 2023, Wind Access removed this case to federal court based on diversity jurisdiction. Dkt. No. 1. In its Notice of Removal, Wind Access recognizes that Magic Valley Electric is a Texas citizen, which would ordinarily preclude the Court's removal jurisdiction under the forum-defendant rule. *Id.*; *see* 28 U.S.C. § 1441(b)(2). However, Wind Access asserts that removal is still proper under the improper joinder doctrine because Albaugh has failed to state a viable claim against Magic Valley Electric under Texas law. Dkt. No. 1 at 5–17. Among other things, Wind Access contends that Albaugh wrongly identified and sued Magic Valley Electric as the owner of the premises on which he was allegedly injured, when the correct owner is actually E.On Climate and Renewables, LLC ("E.On") d/b/a Magic Valley I Wind Farm, LLC ("Magic Valley Wind"), an Illinois company headquartered in Germany. In its Notice of Removal, Wind Access attaches screenshots from the Willacy County Appraisal District's website naming E.On— not Magic Valley Electric—as the owner of the premises on which Albaugh's injury allegedly occurred. Dkt. No. 1-8.

On November 8, 2023, Albaugh filed his Motion to Remand based on the forum-defendant rule, stating that he has pleaded cognizable claims against Magic Valley Electric. Dkt. No. 4. He also challenges Wind Access's argument that its evidence

conclusively proves that Magic Valley Electric did not own the relevant premises on the date of his injury. *Id.* at 10–13. He further contends that assessing the issue of property ownership by conducting a summary inquiry and reviewing Wind Access's evidence is improper at the pleading stage. *Id.* at 10.

On November 28, 2023, Wind Access responded to Albaugh's Motion to Remand. Dkt. No. 5. In its response, Wind Access reiterates the arguments it presented in its Notice or Removal and attaches an affidavit from a Magic Valley Electric official affirming, among other things, that Magic Valley Electric never owned or operated the premises on which Albaugh was injured and "was not aware of who" Albaugh was until he filed suit. Dkt. No. 5-2.

Albaugh did not reply to Wind Access's response to his Motion to Remand. Rather, on December 7, 2023, Albaugh moved to amend his Complaint to add E.On as party to this action. Dkt. No. 6.[1] Albaugh's Motion for Leave merely lists the law relevant to amending pleadings and then summarily asserts that all the factors the Court must consider in ruling on motions to amend favor granting his Motion. *Id.* Albaugh's Motion for Leave does not include his proposed Amended Complaint as an attachment. *Id.* at 3.

On December 18, 2023, Wind Access responded to Albaugh's Motion for Leave. Dkt. No. 7. Among other things discussed below, Wind Access notes that it informed Albaugh "[a]pproximately eight months ago" that Magic Valley Electric does not own the relevant premises and that E.On does. *Id.* It attached email correspondence to its response showing that as of May 2023, Albaugh's attorneys knew that Magic Valley

---

[1] Albaugh did not confer with Defendants before filing his motion as required by Local Rule 7.1(D) of the Local Rules of the U.S. District Court for the Southern District of Texas. The Court advises the parties that it will strike future filings that fail to comply with the Local Rules.

Electric was improperly named as a defendant.[2] *Id.*; Dkt. No. 7-3. Wind Access stresses that even now when Albaugh seeks to amend his Complaint to add E.On as a party, he does not request to drop Magic Valley Electric. Dkt. No. 7 at 1–4. Wind Access posits that Albaugh's failure to request to dismiss Magic Valley Electric stems from an ongoing effort to destroy diversity jurisdiction. *Id.* at 4.

On December 28, 2023, twenty-one days after he moved to amend his Complaint and ten days after Wind Access's response, Albaugh filed a letter with the Court stating only that he "inadvertently excluded Exhibit A 'Plaintiff's First Amended Complaint' to [his Motion for Leave] filed on December 7, 2023." Dkt. No. 8. Albaugh attached his proposed Amended Complaint to his letter as Exhibit A. Dkt. No. 8-1. In his Amended Complaint, Albaugh adds E.On as a party to this action. *Id.* at 3. As for a "Magic Valley" party, Albaugh separately lists as a defendant: "Defendant Magic Valley Wind Farm I, LLC is a limited liability company formed under the laws of Delaware with a principal place of business in Cook County, Illinois. This Defendant has already appeared in this matter and may be served through its counsel of record." *Id.*

On December 29, 2023, Wind Access filed its "Supplemental Response to [Albaugh's] Motion for Leave to Amend." Dkt. No. 9. In it, Wind Access asserts, among other things, that Albaugh's Motion for Leave merely requests to add E.On as a party. *Id.*

---

[2] Albaugh had previously sued Wind Access and Magic Valley Electric in April 2023 in a Hidalgo County, Texas state court. *See* Dkt. No. 7 at 2. Wind Access removed that case to the McAllen Division of the U.S. District Court for the Southern District of Texas arguing, as it does here, that Albaugh sued the incorrect Magic Valley party. *Id.* On April 14, 2023, counsel for Wind Access emailed Albaugh's counsel to state that Albaugh sued the incorrect party. Dkt. No. 7-2. On May 10, 2023, Albaugh's counsel responded via email: "All—it appears y'all are correct and we have the wrong Magic Valley defendant. Please let me know today if y'all . . . would be agreeable to a Rule 41 dismissal without prejudice of this action." Dkt. No. 7-3 at 1. Ultimately, Albaugh moved to voluntarily dismiss the case, and the district court granted Albaugh's motion on June 1, 2023. *See Albaugh v. Wind Access Eng'g, Inc.*, No. 7:23-CV-00120, 2023 WL 3764007, at *1 (S.D. Tex. June 1, 2023) (Alvarez, J.). Albaugh later brought the same claims against the same parties in the 197th District Court in Cameron County. *See* Dkt. No. 1-3.

at 2. Yet, Wind Access continues, Albaugh's "proposed amended complaint [also] attempts to substitute one 'Magic Valley' entity for another—it adds an entirely new defendant that, upon information and belief, has no knowledge of this lawsuit." *Id.* Indeed, as Wind Access properly underscores, Magic Valley Wind was not served and has not appeared here (nor has E.On). Dkt. No. 9 at 3–4. Wind Access also questions Albaugh's decision not to withdraw his Motion to Remand given that: (1) his Amended Complaint drops Magic Valley Electric as a party; (2) the sole basis for his Motion to Remand was Magic Valley Electric's purported Texas citizenship; and (3) now that no defendant is a Texas citizen, the forum-defendant rule does not apply. *Id.*, *see* Dkt. No. 4.

Albaugh's motions are now ripe for consideration.

## II.    MOTION TO REMAND

### A.    Legal Standard

Motions to remand are governed by 28 U.S.C. § 1447(c), which provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). A party may remove any civil action from state court to a federal district court that has proper jurisdiction. *See id.* § 1441(a). A district court may exercise removal jurisdiction over two types of cases: federal question cases and diversity cases. *See id.* §§ 1331, 1332. Relevant here, in diversity cases, district courts have subject matter jurisdiction over all civil actions that are between citizens of different states and involve an amount in controversy exceeding $75,000, exclusive of interest and costs. *See id.* § 1332(a). Removal is only proper in diversity cases if there is "complete diversity." *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016)

(en banc). That means "if any plaintiff is a citizen of the same State as any defendant, then diversity jurisdiction does not exist." *Id.*

"In diversity cases, there is an additional limitation on removal, known as the forum-defendant rule." *Tex. Brine Co., L.L.C. v. Am. Arb. Ass'n, Inc.*, 955 F.3d 482, 485 (5th Cir. 2020). The rule provides that "[a] civil action otherwise removable solely on the basis of [diversity jurisdiction] may not be removed if any of the parties in interest *properly joined* and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2) (emphasis added). Because the rule applies to "properly joined" parties, "[a] removing party may establish federal diversity jurisdiction by demonstrating that the state court plaintiff 'improperly joined' all forum defendants." *Afr. Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 793 (5th Cir. 2014).

To demonstrate improper joinder, the removing defendant must show either: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Ill. Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc). Only the second method is relevant here. Under the second method, "the test for [improper] joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant," i.e., "that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573. Courts "do not determine whether the plaintiff will actually or even probably prevail on the merits of the claim, but look only for a possibility that the plaintiff may do so." *Rodriguez v. Sabatino*, 120 F.3d 589, 591 (5th Cir. 1997) (per curiam). The defendant, therefore, has a "heavy burden" in raising its improper joinder challenge. *Smallwood*, 385 F.3d at 574.

Federal courts in Texas evaluate whether there is a claim against a purportedly improperly joined defendant using the federal pleading standard instead of Texas' more lenient fair notice standard. *See Pena v. City of Rio Grande City*, 879 F.3d 613, 617 (5th Cir. 2018) ("[P]leadings must be reviewed under the federal pleading standard because the question of improper joinder at bottom . . . is solely about determining the federal court's jurisdiction.") (cleaned up). In doing so, the district court "conduct[s] a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Smallwood*, 385 F.3d at 573; *see* Fed. R. Civ. P. 12(b)(6). Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp., v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility requirement "does not impose a probability requirement at the pleading stage," but rather "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence." *Twombly*, 550 U.S. at 556. A complaint will suffice if the "allegations are not so vague that [the defendant] lacked notice of the contours of [the plaintiff]'s claim." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 499 (5th Cir. 2015). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

"Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Smallwood*, 385 F.3d at 573. That said, in limited cases where a "plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the

propriety of joinder, . . . the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.* Such an "inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id.* at 573–74. For example, evidence that an "in-state doctor defendant did not treat the plaintiff patient, . . . a party's residence was not as alleged, or any other fact that easily can be disproved if not true." *Id.* at 574 n.12.

In deciding whether improper joinder has been established, a district court must "resolve all contested factual issues and ambiguities of state law in favor of the plaintiff." *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007); *cf. KSN Hosp. LLC v. Great Lakes Ins. SE*, 640 F. Supp. 3d 725, 730 (S.D. Tex. 2022) (Rodriguez, J.) ("[T]he removal statute is strictly construed in favor of remand . . . .").

## B.   Analysis

Wind Access asserts that Magic Valley Electric is an improperly joined party because Albaugh has failed to state premises liability and negligence claims against Magic Valley Electric. Dkt. No. 1 at 5–17. Albaugh contends that Wind Access has failed to meet its heavy burden to succeed on an improper joinder challenge and so this case should be remanded to state court. Dkt. No. 4 at 6.

### 1.   Premises Liability

In Texas, "a property owner generally owes those invited onto the property a duty to make the premises safe or to warn of dangerous conditions as reasonably prudent under the circumstances." *Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 644 (Tex. 2016).[3] To succeed on a premises liability suit, the invitee must prove that: "(1) the

---

[3] "In premises liability cases, the duty owed by an owner or occupier of property is determined by whether the allegedly injured party is classified as an invitee, licensee, or trespasser." *Mohammadi v. Albertsons*,

property owner had actual or constructive knowledge of the condition causing the injury; (2) the condition posed an unreasonable risk of harm; (3) the property owner failed to take reasonable care to reduce or eliminate the risk; and (4) . . . the risk was the proximate cause of injuries to the invitee." *Garcia v. Wal-Mart Stores Tex., L.L.C.*, 893 F.3d 278, 279 (5th Cir. 2018) (quoting *Henkel v. Norman*, 441 S.W.3d 249, 251–52 (Tex. 2014) (per curiam)).

Albaugh's premises liability claim against Magic Valley Electric alleges the following:

> 13.    At all material times, [Magic Valley Electric] owned, occupied, and/or controlled the subject facility where Plaintiff was injured. The condition of the area where Plaintiff was injured posed an unreasonable risk of harm, and [Magic Valley Electric] had actual knowledge or reasonably should have known of the unreasonably dangerous condition. Moreover, Plaintiff did not have knowledge of the unreasonably dangerous condition. Specifically, the wind turbine was built and maintained in an unreasonably dangerous condition and contributed to Plaintiff's injuries.

> 14.    Plaintiff was an invitee who entered [Magic Valley Electric's] premises with [Magic Valley Electric's] knowledge and for [Magic Valley Electric's] benefit. [Magic Valley Electric] had a duty to either warn Plaintiff of the unreasonably dangerous condition or make the unreasonably dangerous condition reasonably safe. [Magic Valley Electric's] breaches proximately caused Plaintiff's injuries.

Dkt. No. 1-3 at 4. Wind Access argues that: (1) contrary to Albaugh's allegation, the evidence shows that Magic Valley Electric neither owns nor has any connection to the premises on which the injury occurred and, indeed, Magic Valley Electric never heard of Albaugh until he filed his Complaint; and (2) even if Magic Valley Electric owned or operated the relevant premises, Albaugh's Complaint merely recites the elements of his

---

*LLC*, 656 S.W.3d 851, 856 (Tex. App.—Houston [14th Dist.] 2022, pet. pending). "An invitee enters land with the owner or occupier's knowledge and for the mutual benefit of both, while a licensee enters and remains on land with the owner or occupier's consent but for the licensee's own convenience." *Id.* Here, both parties' motions treat Albaugh's classification as that of an invitee.

cause of action, which is insufficient to state a claim under the federal pleading standard. Dkt. Nos. 1 at 7–11; 5 at 4–10. Albaugh challenges Wind Access's argument that its evidence conclusively proves that it did not own the relevant premises on the date of his injury. Dkt. No. 4 at 11–12. He also contends that, under *Smallwood*, reaching the issue of ownership by conducting a summary inquiry and reviewing Wind Access's evidence is improper and implies a concession by Wind Access that Albaugh has stated a claim. *Id.* at 10.

The analysis begins with Wind Access's second contention. *See Smallwood*, 385 F.3d at 573; *Cumpian v. Alcoa World Alumina, L.L.C.*, 910 F.3d 216, 220 (5th Cir. 2018) ("Using [the *Smallwood*] framework, we first review the allegations in the complaint to see if [plaintiff] alleged sufficient facts to state a plausible claim for relief against [defendant]."). The Court agrees with Wind Access and finds that Albaugh's premises liability allegation against Magic Valley Electric fails to survive a Rule 12(b)(6)-type analysis. *See Smallwood*, 385 F.3d at 573. Although he recites the relevant elements of his premises liability claim, Albaugh provides no factual basis to support the claim. *See Iqbal*, 556 U.S. at 678.

Albaugh asserts that Magic Valley Electric "owned, occupied, and/or controlled the subject facility" where he was injured. Dkt. No. 1-3 at 4. But "simply pleading" as much "does not alone suffice; 'the well-pleaded facts' must make the allegation of control a plausible one." *Smit v. SXSW Holdings, Inc.*, 903 F.3d 522, 528 (5th Cir. 2018) (citing *Iqbal*, 556 U.S. at 679). Here, nowhere in his Complaint does Albaugh identify the "subject facility" at which he was injured or any facts supporting his bare assertion that Magic Valley Electric owned, occupied, controlled, or had any connection to the unidentified premises. *See id.*; *see also Morales v. Compass Grp. USA, Inc.*, No. EP-19-CV-274-PRM,

2020 WL 1862141, at *4 (W.D. Tex. Apr. 14, 2020) (Martinez, J.) (implying that plaintiff's premises liability claim in her original complaint would have been dismissed absent amendment, in part because she "failed to 'identif[y] the premises at issue[]'").

Albaugh states that "the condition" leading to his injuries presented an unreasonable risk of harm, but he fails to define that condition. Dkt. No. 1-3 at 4. In the "Facts" section of his Complaint, his injuries resulted from a "spool holder malfunction[]." *Id.* at 3. Elsewhere in his Complaint, Albaugh avers that "the wind turbine was built and maintained in an unreasonably dangerous condition and contributed to [his] injuries." *Id.* But Albaugh does not assert that Magic Valley Electric is responsible for the spool holder or that it built and maintained the wind turbine at all—let alone in an unreasonably dangerous manner. Nor does he list any facts supporting those (unstated) assertions.

To succeed on his claim, Albaugh must show that Magic Valley Electric had actual or constructive knowledge of an unreasonably dangerous condition. *See Garcia*, 893 F.3d at 279. "To prove the actual-knowledge element of a viable premises-defect claim, the plaintiff must show that at the time of the incident, the owner/operator of the premises knew about the dangerous condition." *Price v. Kroger Co.*, No. CV H-20-03670, 2022 WL 1138261, at *4 (S.D. Tex. Apr. 18, 2022) (Lake, J.) (quoting *City of Denton v. Paper*, 376 S.W.3d 762, 767 (Tex. 2012) (per curiam) (brackets omitted)). "Constructive knowledge is a substitute in the law for actual knowledge." *Id.* (quoting *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 102 (Tex. 2000)). "In premises cases constructive knowledge can be established by showing that the condition had existed long enough for the owner or occupier to have discovered it upon reasonable inspection." *Id.* (quoting *CMH Homes, Inc.*, 15 S.W.3d at 102-03).

Without defining the condition causing his injuries, Albaugh cannot prove that

Magic Valley Electric knew of it. In any event, although Albaugh contends in conclusory fashion that Magic Valley Electric had actual or constructive knowledge of the unidentified, unreasonably dangerous condition, he discloses no facts supporting that assertion. *See Rosario Dominguez v. Target Corp.*, No. 5:18-CV-23, 2018 WL 8583800, at *2 (S.D. Tex. July 25, 2018) (Marmolejo, J.) ("Despite Plaintiff's varied articulations of the same idea, her complaint does no more than formulaically recite that Defendant had actual or constructive knowledge of water on the floor in its bathroom. Devoid of further factual enhancement, the Court is unable to reasonably infer from Plaintiff's amended complaint that Defendant is liable for the misconduct alleged.").

For these reasons, Albaugh fails to provide Magic Valley Electric "notice of the contours of" his premises liability claim against it. *See Wooten*, 788 F.3d at 499. Accordingly, the Court finds no reasonable basis to predict that Albaugh can recover against Magic Valley Electric on his premises liability claim. *See Smallwood*, 385 F.3d at 573. As to that claim, then, the Court finds Wind Access's improper joinder assertion meritorious.[4]

---

[4] Finding that Albaugh failed to state a premises liability claim, the Court need not pierce the pleadings to conduct a summary inquiry on the issue of property ownership. *See Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc). Nevertheless, the Court notes that, as set out above, in its Notice of Removal, Wind Access attaches screenshots from the Willacy County Appraisal District's website listing the property on which Albaugh's injury occurred and naming E.On—not Magic Valley Electric—as the owner of the premises where Albaugh's injuries allegedly occurred. Dkt. No. 1-8. Further, in its response to Albaugh's Motion to Remand, Wind Access attaches an affidavit from a Magic Valley Electric official stating, among other things, that Magic Valley Electric never owned or operated the premises and "was not aware of who" Albaugh was until he filed suit. Dkt. No. 5-2. In its response to Albaugh's Motion for Leave, Wind Access provided additional evidence that Magic Valley Electric was incorrectly sued—that being correspondence from Albaugh's counsel admitting as much. Dkt. No. 7-3 at 1. Other evidence also indicates that Magic Valley Electric was improperly joined: most notably, the fact that Albaugh's proposed Amended Complaint drops Magic Valley Electric as a party to this action. Dkt. No. 8-1. Without owning, operating, or controlling the relevant premises, Magic Valley Electric cannot be liable for premises liability. *See Garcia v. Wal-Mart Stores Tex., L.L.C.*, 893 F.3d 278, 279 (5th Cir. 2018).

### 2.      Negligence, Negligence Per Se, and Gross Negligence

Albaugh's ordinary negligence, gross negligence, and negligence per se claims against Magic Valley Electric fare no better. In Texas, the elements of an ordinary negligence claim are: "(1) a legal duty; (2) a breach of that duty; and (3) damages proximately resulting from the breach." *Elephant Ins. Co. v. Kenyon*, 644 S.W.3d 137, 144 (Tex. 2022). In his Complaint, Albaugh alleges that Magic Valley Electric was "negligent, negligent per se, and grossly negligent, and acted recklessly, intentionally, and/or with an utter wanton disregard for the rights and safety of Hendrix[5] [sic] and others." Dkt. No. 1-3. He continues:

- Magic Valley failed to properly train and oversee their employees, contractors, agents, and/or borrowed servants;
- Magic Valley failed to provide adequate medical treatment;
- Magic Valley failed to provide a safe work[]place;
- Magic Valley failed to properly inspect and maintain the equipment in question;
- Magic Valley failed to warn about unreasonably dangerous conditions at the work site;
- Magic Valley failed to make unreasonably dangerous conditions at the worksite safe; [and]
- Magic Valley failed to timely and adequately react and respond to the emergency situation[.]

Dkt. No. 1-3 at 7–8.

Albaugh's ordinary negligence claim fails because, once again, it is not backed by sufficient factual assertions. *See Iqbal*, 556 U.S. at 678. Nowhere in his Complaint does Albaugh identify the duty Magic Valley Electric purportedly owed him, how Magic Valley Electric breached that duty, and whether or how that alleged breach caused his injury. *See*

---

[5] There is no party to this action named "Hendrix."

*Kenyon*, 644 S.W.3d at 144. He does not describe the "emergency situation" underlying his claim, what medical treatment was or was not provided, or what the "unreasonably dangerous conditions" were. *See generally* Dkt. No. 1-3. Yet Albaugh contends that his list of allegations suffices to state an ordinary negligence claim under *Rivera v. United States*, No. EP-15-CV-00021-KC, 2015 WL 5608113, at *1 (W.D. Tex. Sept. 22, 2015) (Cardone, J.).

The plaintiffs in *Rivera* sued multiple defendants, including a truck driver whose truck collided with the bus plaintiffs were travelling in on March 7, 2013, "near Hudspeth County, Texas, on Interstate 10 at approximately 2:29 a.m." *Id.* at 1, 3. In their complaint, plaintiffs specified that their injuries and damages stemmed from that accident. *Id.* at 3. Among other claims, plaintiffs brought a negligence claim against the truck driver. *Id.* Specifically, plaintiffs alleged that "by one or more of the following alternative theories of negligence," the driver proximately caused the collision and their damages:

- a. Unsafe driving during the danger zone (midnight to 6:00 a.m.)
- b. Driving while fatigued.
- c. Driving at a speed slower than what was reasonable for freeway driving.
- d. Failure to keep a proper lookout.
- e. Failing to drive on the shoulder when travelling slower than freeway speed.
- f. Failure to honk and give adequate warning of the pending danger.
- g. Failure to warn of Defendant's slow moving vehicle.
- h. Failure to use due care in operating a commercial motor vehicle.
- i. Operating a commercial vehicle in the United States without reasonable qualifications, training, testing and experience.
- j. Failure to pay attention.
- k. Failure to take safe evasive action.
- l. Operating a commercial vehicle without qualifying under the Federal Motor Carrier Safety Act.

m.     Other negligence.

*Id.* Plaintiffs asserted that the acts or omissions were "other than what a reasonable and prudent person would have been doing under the same or similar circumstances." *Rivera v. United States*, No. EP-15-CV-00021-KC, (W.D. Tex. Sept. 22, 2015) (Cardone, J.) (Plaintiffs' Original Complaint, ECF No. 1 at 8).

The truck driver moved to dismiss plaintiffs' claim against him under Federal Rule of Civil Procedure 12(b)(6), arguing "that Plaintiffs' alternative theories of negligence are merely 'a laundry list of conclusory allegations,'" and "that the allegations listed above fail to state a plausible claim for relief because Plaintiffs do not plead facts to support each element of a negligence claim under Texas law." *Rivera*, 2015 WL 5608113, at *3. The court rejected both arguments. *Id.*

First, the court rejected the argument that a pleading must expressly allege facts on each element of a claim to survive a motion to dismiss. *Id.* (citing *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 438 (5th Cir. 2004) ("Rule 8(a) does not require pleading specific facts in support of each element of plaintiff's prima facie case . . . .")). Rather, the pleading requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Rivera*, 2015 WL 5608113, at *3 (quoting Fed. R. Civ. P. 8(a)(2)). The court then concluded that plaintiffs pleaded sufficient facts "identify[ing] specific ways in which [the truck driver]'s conduct fell below the applicable standard of care" and that the specified "actions and omissions were the proximate cause of the crash" and their injuries. *Id.* at 4.

*Rivera* is distinguishable because the plaintiffs there specified the incident leading to their injuries, who caused their injuries, the nature of the truck driver's negligent actions or omissions, and they stated that the truck driver's conduct fell below the relevant standard of care. *Id.* at 1, 3–4. The court there concluded that the pleading gave defendant

sufficient notice of plaintiffs' claim against him. *Id.* at 4. Here, Albaugh does not identify Magic Valley Electric's duty to him, what acts or omissions by Magic Valley Electric were purportedly negligent, or if or how those purported acts or omissions caused his injuries. Dkt. No. Dkt. No. 1-3 at 7–8. Stated otherwise, in *Rivera*, the "laundry list" of allegations consisted of specific theories of negligence relevant to the stated automobile accident underlying the suit. *Rivera*, 2015 WL 5608113, at *3. Here, Albaugh's hodgepodge of alleged negligent acts have no clear connection to his injury and find no support in the facts.[6] Because his ordinary negligence claim against Magic Valley Electric cannot survive a 12(b)(6)-type analysis, the Court finds Wind Access's improper joinder assertion as to that claim meritorious. *See Smallwood*, 385 F.3d at 573.

Albaugh's negligence per se theory and gross negligence claim also miss the mark. "[N]egligence *per se* is not a separate cause of action that exists independently of a common-law negligence cause of action. . . . Rather, negligence *per se* is merely one *method* of proving a breach of duty, a requisite element of any negligence cause of action." *Barry v. United States*, ____ F. Supp. 3d____, No. 1:22-CV-150, 2023 WL 2996101, at *6 (S.D. Tex. Mar. 31, 2023) (Rodriguez, J.) (quoting *Thomas v. Uzoka*, 290 S.W.3d 437, 445 (Tex. App.—Houston [14th Dist.] 2009, pet. denied)). "Negligence per se is a common-law doctrine in which a duty is imposed based on a standard of conduct created by a penal statute rather than on the reasonably prudent person test used in pure negligence claims." *Smith v. Merritt*, 940 S.W.2d 602, 607 (Tex. 1997). "The threshold questions in every negligence per se case are whether the plaintiff belongs to the class that the statute was intended to protect and whether the plaintiff's injury is of a type that the statute was

---

[6] That the Motion to Remand refers to the alleged negligent party as "Hendrix" further demonstrates that the assertions are likely boilerplate, having no relation to the facts of this case.

designed to prevent." *Perry v. S.N.*, 973 S.W.2d 301, 305 (Tex. 1998).

> To prove gross negligence, a plaintiff must show that:
>
> (1) viewed objectively from the actor's standpoint, the act or omission complained of . . . involve[s] an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the actor . . . [has] actual, subjective awareness of the risk involved, but nevertheless proceed[s] in conscious indifference to the rights, safety, or welfare of others.

*Boerjan v. Rodriguez*, 436 S.W.3d 307, 311 (Tex. 2014) (per curiam); *see Medina v. Zuniga*, 593 S.W.3d 238, 247–48 (Tex. 2019).

In his Motion to Remand, Albaugh does not even address his negligence per se theory. Dkt. No. 4. As to his gross negligence claim, Albaugh states only that "the Court need not address it" because "to support remand, [he] need show only the existence of a *single* valid cause of action against Magic Valley[ Electric]." *Id.* at 20. He insists that he "has clearly done so here with respect to his premises liability and negligence claims," so he does not brief his gross negligence claim. *Id.* The Court disagrees with Albaugh's sentiment, as noted above. In any event, Albaugh has not alleged that Magic Valley Electric had a duty at all—let alone one prescribed by statute. *See Smith*, 940 S.W.2d at 607; *Perry*, 973 S.W.2d at 305; *Smit* 903 F.3d at 529 (affirming dismissal of negligence per se theory of recovery given plaintiff's "failure to allege any violation of a codified standard of conduct"). Nor does he allege any facts or brief any argument supporting a finding that Magic Valley Electric was grossly negligent. *See Boerjan*, 436 S.W.3d at 311; *Medina*, 593 S.W.3d at 247–48. Accordingly, Albaugh's negligence per se and gross negligence theories of liability fail to survive a 12(b)(6) analysis.

The Court finds no reasonable basis to predict that Albaugh can recover against Magic Valley Electric on his ordinary negligence, negligence per se, and gross negligence

claims. *See Smallwood*, 385 F.3d at 573. As to those claims, then, the Court finds Wind Access's improper joinder assertion meritorious. Having already concluded that the same is true for Albaugh's premises liability claim against Magic Valley Electric, the Court finds that Magic Valley Electric is an improperly joined party and recommends that Albaugh's Motion to Remand be denied, and Magic Valley Electric be dismissed from this action. *See Smallwood*, 385 F.3d at 573.

### III.   MOTION FOR LEAVE

The Court now considers Albaugh's Motion for Leave to Amend his Complaint. Under Rule 15(a)(2), courts "should freely give leave [to amend pleadings] when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 15 "evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (quoting *Lyn–Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir. 2002)). Consequently, "[a] district court must possess a substantial reason to deny a request for leave to amend," but "leave to amend is by no means automatic." *Id.* (cleaned up). Instead, "[d]ecisions concerning motions to amend are 'entrusted to the sound discretion of the district court.'" *Id.* (quoting *Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1998)). When assessing a motion for leave to amend, the district court may consider factors such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Id.*

On December 7, 2023, Albaugh moved to amend his Complaint "to add E.On Climate & Renewables, LLC" as party to this action. Dkt. No. 6. His argument: "[Albaugh]'s motion for leave to amend should be granted given Rule 15(a)(2)'s provision

that courts 'should freely give leave when justice so requires.'" *Id.* at 1; *see* Fed. R. Civ. P. 15(a)(2). Albaugh's Motion lays out the abovementioned legal standard and factors courts consider when ruling on motions to amend and then summarily asserts that the "factors weigh in favor of granting [Albaugh]'s motion for leave." Dkt. No. 6 at 2–3. Albaugh did not attach his proposed Amended Complaint to his Motion for Leave, but later filed a letter with the Court including the proposed Amended Complaint as an exhibit. *See id.*; Dkt. Nos. 8, 8-1.

On December 18, 2023, Wind Access responded to Albaugh's Motion for Leave arguing, with proper citation to authority, that none of the Rule 15 factors favors granting Albaugh's Motion for Leave. Dkt. No. 7 at 5. The Court agrees.

Wind Access first contends that the undue delay factor weighs against Albaugh because "[m]ore than eight months passed between the time Magic Valley Electric informed [Albaugh] the property was owned by E.On and the time plaintiff filed his motion for leave seeking to add E.On as a defendant." Dkt. No. 7 at 6; *see Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 644 (5th Cir. 2007) (noting that "undue delay" means "fail[ing] to take advantage of earlier opportunities to amend"). Indeed, email records show that Albaugh knew Magic Valley Electric was incorrectly sued before even refiling his case in Willacy County. *See* Dkt. No. No. 7-3 at 1. There has been no attempt to explain Albaugh's failure to sue the correct party or delay in seeking amendment. The undue delay factor weighs in favor of denying Albaugh's Motion for Leave. *See Gonzales v. Ridgewood Landscaping, Inc.*, No. CIV.A. H-09-2992, 2010 WL 5100601, at *1 (S.D. Tex. Dec. 8, 2010) (Rosenthal, J.) ("The record shows that the proposed claim against Casci is based on facts that the plaintiffs knew before they filed the suit or learned a year ago, when the plaintiffs deposed Casci. There is no explanation for the delay in seeking to add him as a

party. Given the circumstances, the delay in amending to add him as a party is 'undue.'").

Relatedly, Wind Access asserts that Albaugh "has been dilatory . . . in seeking to amend his complaint" and has acted in "bad faith to defeat diversity jurisdiction." Dkt. No. 7 at 7. In claiming as much, Wind Access identifies Albaugh's failure: (1) to properly search property records for the correct party to sue; (2) to timely amend his pleadings when he knew more than eight months ago that E.On was the proper party to sue; and (3) to dismiss Magic Valley Electric as a party to this action when it has no connection to the case. *Id*. at 7–8. After Albaugh subsequently filed his letter to the Court and attached a proposed Amended Complaint, Wind Access further argued that Albaugh's stealth substitution of Magic Valley Electric for Magic Valley Wind, coupled with his failure to withdraw his Motion to Remand, is additional evidence of bad faith and dilatory motive. Dkt. No. 9 at 2–4. The Court agrees. Though his stated reason for filing his proposed Amended Complaint was simply to add E.On as a party, Albaugh also substituted the "Magic Valley" party being sued and improperly claimed that Magic Valley Wind has appeared and been served. Dkt. No. 8-1 at 3. Notwithstanding, Albaugh has not moved to withdraw his Motion to Remand in which he asserts that he "has sued Magic Valley[ Electric], a Texas citizen and forum defendant—which should preclude removal." Dkt. No. 2 at 5. The bad faith and dilatory motive factor weighs against granting Albaugh's Motion for Leave.

Contrary to Albaugh's assertion that "[n]o party would be prejudiced by the Court's allowing [his] amendment," Wind Access argues that E.On will be prejudiced if the Court grants Albaugh Motion for Leave because "E.On had the right and expectation to be served with process and notice of suit before the statute of limitations expired," and Albaugh filed his proposed Amended Complaint twenty-one days after the statute of

limitations expired. *Id.* at 9; *see Schaefer v. Gulf Coast Reg'l Blood Ctr.*, 10 F.3d 327, 331 (5th Cir. 1994) (per curiam) ("In Texas, causes of action for personal injuries are governed by a two-year statute of limitations, which specifically provides in pertinent part that 'a person must bring suit for . . . personal injury . . . not later than two years after the day the cause of action accrues." (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 16.003)); *Strickland v. Johns-Manville Int'l Corp.*, 461 F. Supp. 215, 218 (S.D. Tex. 1978) (Singleton, J.) ("[T]he purpose for having a statute of limitations [is] to prevent litigation of stale claims where the recollection of witnesses and the availability of other relevant evidence diminish through time."). It is Wind Access's belief that "E.On has no idea this lawsuit is pending, much less that [Albaugh] intends to pursue a claim against it." *Id.*

While not itself sufficient to support the denial of Albaugh's motion, when coupled with consideration of the other Rule 15 factors, the Court finds that Albaugh's failure to move to join E.On until the last day within his claim's statute of limitations (or later, given the proposed Amended Complaint's filing three weeks after the limitation period's expiration) weighs against granting his Motion for Leave. Though Magic Valley Electric informed Albaugh in April 2023 that E.On was the proper party to sue, Albaugh never served E.On and only sought to add it as a part on December 7, 2023. And Albaugh has not endeavored to substantively brief the issue of prejudice (or any of the Rule 15 factors) or whether his Amended Complaint, filed three weeks after the limitation period's expiration, should relate back to the date of his original Complaint. *See* Fed. R. Civ. P. 15(c).

Finally, Wind Access argues that Albaugh's amendment is futile. Dkt. No. 9 at 4. It asserts that Albaugh only sought leave to add E.On as a party, and his proposed Amended Complaint, while naming E.On as a party, fails to actually "allege a colorable claim"

against it. *Id.* "Denying a motion to amend is not an abuse of discretion if allowing an amendment would be futile." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014). "An amendment is futile if it would fail to survive a Rule 12(b)(6) motion. Therefore, [courts] review the proposed amended complaint under the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* (cleaned up). As stated, under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). And "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In his Amended Complaint, Albaugh lists E.On in the heading for his premises liability claim, but none of the conduct alleged is attributed to E.On. *See* Dkt. No. 8-1 at 4-5. In other words, Albaugh has not even asserted a claim against E.On—let alone by sufficient facts to support the claim. In any event, none of the allegations in Albaugh's premises liability claim has changed. *See generally id.* at 2–11. Even attributing to E.On the allegations in Albaugh's premises liability claim, then, Albaugh has failed to allege sufficient facts to support his claim for the same reason the Court recommends denying his Motion to Remand above. *See Iqbal*, 556 U.S. at 678; *Marucci Sports, L.L.C.*, 751 F.3d at 378.

In sum, Albaugh's Motion for Leave should be denied because each factor courts consider when ruling on motions for leave favors a denial. *See Jones*, 427 F.3d at 994; Fed. R. Civ. P. 15.[7]

---

[7] The Court takes notice of Wind Access's passing reference to Federal Rule of Civil Procedure 11 concerning issues related to counsel for Albaugh's motion practice. *See* Dkt. No. 7 at 4 n.3; Fed. R. Civ. P. 11. Under Rule 11, by presenting a pleading to the Court, "an attorney . . . certifies that to the best of the [attorney]'s knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that it is not being presented for an improper purpose, that the claims are warranted, that "the factual contentions

### IV.   RECOMMENDATION

For all these reasons, the undersigned recommends that Albaugh's Motion to Remand (Dkt. No. 4) and Motion for Leave to Amend (Dkt. No. 6) be **DENIED**, and Magic Valley Electric be **DISMISSED** as a party to this action.


### V.   NOTICE TO PARTIES

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).


**SIGNED** on this **17th** day of **January, 2024**, at Brownsville, Texas.


_____
**Ignacio Torteya, III**
**United States Magistrate Judge**

---

have evidentiary support," and that "the denials of factual contentions are warranted." *Id.* R. 11(b). The Court will stop short of sua sponte ordering Albaugh's counsel to show cause as to why the conduct and representations made to the Court highlighted throughout this Report and Recommendation have not violated Rule 11. *See* Fed. R. Civ. P. 11(c)(3). Albaugh's counsel is warned, however, to ensure that future filings comply with the rules of procedure.